**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **O'NEAL HENDERSON,** ) | |
| **on behalf of himself and all others** ) | |
| **similarly situated** ) | |
| ) | |
| **Plaintiff,** ) | **C.A. No.  10-459** |
| **vs.** ) | |
| ) | **CLASS ACTION** |
| **HIRERIGHT SOLUTIONS, INC., and** ) | |
| **USIS COMMERCIAL SERVICES, INC.,** ) | |
| ) | |
| **Defendants.** ) | **Jury Trial Demanded** |

## AMENDED CLASS ACTION COMPLAINT

## I.   PRELIMINARY STATEMENT

1.      This is a consumer class action based upon Defendants' willful violation of the

Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA").  Plaintiff brings this action on

behalf of thousands of employment applicants throughout the country who have been the subject

of prejudicial, misleading and inaccurate background reports performed by the Defendants and

sold to employers.  Defendants have adopted and maintained a policy and practice of failing to

timely update such applicants' criminal record histories to show that such records have been

expunged, thus not accurately reflecting the final disposition.

The prejudice caused by the erroneous reporting is exacerbated by Defendants' failure to

notify the consumer contemporaneously of the fact that the erroneous criminal record

information is being sent to the employer, and Defendants' failure to maintain strict procedures

to assure that expunged records are removed from their reports and that the information is

complete and up to date.  As a result, consumers who are entitled to receive copies of their credit

files from Defendants pursuant to section 1681k of the FCRA are deprived of full disclosure, and

unable to adequately verify and/or dispute the accuracy of the information that Defendants are

selling to employers.  Defendants' practice harms consumers seeking employment by prejudicing their prospective employers with inaccurate and misleading information, and harms interstate commerce as a whole.

## II.    JURISDICTION AND VENUE

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331 and 1337.

3.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.    PARTIES

4.    Plaintiff O'Neal Henderson is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 3910 Delhi Street, Philadelphia, Pennsylvania 19140.

5.    Defendant HireRight Solutions, Inc. ("HireRight") is an Oklahoma corporation that regularly conducts business in Philadelphia County, Pennsylvania.  HireRight has headquarters in Irvine, California, and a principal place of business located at 4500 South 129th East Avenue, Suite 200, Tulsa, Oklahoma 74134-5885.

6.    Defendant USIS Commercial Services, Inc. ("USIS") is a Delaware corporation that regularly conducts business in Philadelphia County, Pennsylvania.  USIS has a principal place of business located at 4500 South 129th East Avenue, Suite 200, Tulsa, Oklahoma 74134-5885.  USIS and HireRight recently united under the HireRight brand name.

## IV.    FACTUAL ALLEGATIONS

### A.    Defendants' Practices As A Consumer Reporting Agency And Furnisher Of Consumer Reports For Employment Purposes

7.    At all times pertinent hereto, Defendants USIS and HireRight were each a consumer reporting agency ("CRA") as defined by section 1681a(f) of the FCRA.

8.      Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by CRAs, including public record information.

9.      Defendants investigate and review public record databases and maintain consumer files, which contain public record information concerning, among other things, the criminal record history of individuals.

10.     Defendants sell such consumer files to potential employers wishing to investigate the criminal record history, or lack thereof, with regard to various job applicants.  According to a HireRight press release from March 2009, the Defendant sells background reports to more than 28,000 businesses across the country.

11.     When a CRA furnishes a consumer report for employment purposes, and compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment, the CRA, at the time the public record information is reported to the user of the consumer report, must notify the consumer of the fact that public record information is being reported by the CRA, together with the name and address of the person to whom such information is being reported.  15 U.S.C. § 1692k(a)(1).

12.     A CRA is also required to maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported, that it is complete and up to date. 15 U.S.C. § 1692k(a)(2).

13.     A CRA is also required to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1692e(b).

14.    Despite these clear and unambiguous requirements of the FCRA, Defendants neither notify the consumer contemporaneously of the fact that public record information is being reported by Defendants, nor do they maintain strict  procedures designed to insure that such information is complete and up to date, nor do they utilize reasonable procedures designed to assure maximum possible accuracy.  Based upon a common policy and practice, Defendants regularly and illegally report a criminal record that has been expunged by court order, so that the individual's criminal record history appears more serious than it actually is.

15.     Defendants' practice not only violates the FCRA as a matter of law, it exacts serious consequences on consumer job applicants and interstate commerce.  When consumers have been reported as having criminal history records that have actually been expunged by court order, they are undoubtedly viewed as less desirable job applicants and more likely not to be hired by the employers who pay Defendants to issue such reports.

16.    Further, such consumers are prejudiced in their ability to adequately determine whether the information is being accurately reported.  Pursuant to Defendants' practice, by the time the consumer is made aware of the inaccurate reporting, it is too late to correct the information because it has already been sold to the employer by the Defendants and has formed the basis of a decision whether to hire the applicant.

17.     Despite their duties to notify the consumer contemporaneously of the fact that the expunged criminal record information is being sent to the employer, to maintain strict procedures to assure that criminal record information is complete and up to date, and to utilize procedures designed to assure maximum possible accuracy of the criminal record information they sell to prospective employers, Defendants have nonetheless deliberately, willfully, intentionally, recklessly and negligently adopted a policy and practice that disregards these duties, in violation of the FCRA.

B.      **The Experience Of The Representative Plaintiff**

18.     In July 1995, Mr. Henderson had been arrested as a result of an unfortunate encounter with the Philadelphia Housing Authority police within hours of learning of the death of his father.  Mr. Henderson was found guilty of simple assault and resisting arrest, and sentenced to less than a year of probation.

19.     In a separate case brought in connection with the July 1995 incident, Mr. Henderson was found not guilty of three other charges (recklessly endangering another person, simple assault, and resisting arrest other law enforcement) and a charge of aggravated assault was dismissed.

20.     In January 2007, Mr. Henderson was arrested in connection with an alleged sexual assault.  All charges were withdrawn by the District Attorney.

21.     By court Orders dated May 18, 2009 (the "Expungement Orders"), the aforementioned charges of which Mr. Henderson was not convicted were ordered expunged by the Court of Common Pleas, Criminal Trial Division, for Philadelphia County.

22.     Certified copes of the Expungement Orders were ordered to be served on the Philadelphia Police Department, Expungement Unit; the Pennsylvania State Police ("PSP"), Central Records; the Administrative Office of Pennsylvania Courts ("AOPC") Expungement Unit; and, the First Judicial District of Pennsylvania, Data Processing Unit.

23.     The Expungement Orders further ordered that the arresting agency shall destroy or deliver to the defendant or his representative all criminal records, fingerprints, photographic plates and photographs pertaining to the expunged charges, and also ordered the Pennsylvania State Police to request the Federal Bureau of Investigation to return to them all records pertaining to the arrests, to be destroyed upon receipt.

24.     Defendants prepared a series of criminal background check reports on Mr. Henderson after the Expungement Orders were entered.  These reports were prepared between June 4, 2009 and June 22, 2009.

25.     The public sources of information in Pennsylvania from which CRAs such as HireRight can obtain information used for criminal background checks are maintained by AOPC and the PSP.

26.     In Pennsylvania, criminal court records are made publicly available at no cost and with no restrictions in a database maintained by AOPC and available on its website.  These records can be accessed within seconds from the AOPC website.

27.      By contrast, a request for information from the PSP database costs $10.00. Moreover, if the person's record shows arrests or convictions, there will not be a response for at least two to three weeks, and often longer.  For these reasons, CRAs seldom order or wait for PSP records before generating a background check, unless the job for which a person is being screened requires a PSP record check as a matter of law.

28.     Consequently, CRAs as a matter of general practice use the AOPC database as their source of public criminal history data in Pennsylvania.

29.     As they expressly state in their background reports, Defendants utilize the AOPC database as a "source" in connection with their compilation and sale of background reports on consumers.

30.     As a general practice, expunged criminal charges in Philadelphia are hidden from public view in AOPC's database within days of an expungement order.

31.     Mr. Henderson's expunged charges were removed from public view in AOPC's database within days of the May 18, 2009 Expungement Orders.  It is known with certainty that these expunged charges were hidden from public view at least as of June 5, 2009.

32.     As of the removal from public view of the expunged charges from AOPC's database, any preparer of a background check that maintained strict procedures designed to insure complete and up to date information would have been aware that it was no longer appropriate to report the expunged charges.

33.     Defendants continued to report the expunged charges on Mr. Henderson's background check reports after they had been hidden from public view in AOPC's database.

34.     In May 2009, Mr. Henderson applied for the position of truck driver with Road Link USA ("Road Link").

35.     Road Link employed Defendant USIS to perform a public record information search on Mr. Henderson.

36.     On or about June 4, 2009, USIS sent Mr. Henderson a copy of his consumer report (the "June 4 Report") accompanied by a letter which stated in part that "this letter is notification that the enclosed Public Record Information on [Mr. Henderson] has been ordered and is being provided to [Road Link].  This notice is being sent to you pursuant to Section 613 of the Fair Credit Reporting Act."

37.     The June 4 Report comprised over ten pages and USIS deliberately and knowingly reported the expunged cases multiple times.  The June 4 Report states, at page 8, that the AOPC was the Defendant's "source" for the criminal record information.

38.     On June 9, 2009, Mr. Henderson's attorney sent Defendant USIS a letter notifying Defendant of, and enclosing copies of, the Expungement Orders.  Mr. Henderson's attorney demanded that Defendants USIS or HireRight immediately remove the expunged cases from their data bases and not report them in any further criminal record report on Mr. Henderson.

39.     Around the same time in 2009, Mr. Henderson applied for the position of truck driver with Prime, Inc. ("Prime").

40.     Prime employed Defendant USIS to perform a public record information search on Mr. Henderson.

41.     On or about June 10, 2009, USIS sent Mr. Henderson a copy of his consumer report (the "June 10 Report") accompanied by a letter which stated in part that "this letter is notification that the enclosed Public Record Information on [Mr. Henderson] has been ordered and is being provided to [Prime].  This notice is being sent to you pursuant to Section 613 of the Fair Credit Reporting Act."

42.     The June 10 Report comprised over ten pages and USIS deliberately and knowingly reported the expunged cases multiple times. The June 10 Report states, at page 8, that the AOPC was the Defendant's "source" for the criminal record information.

43.     Around the same time in 2009, Mr. Henderson applied for the position of truck driver with CR England, Inc. ("CR England").

44.     CR England employed Defendant USIS to perform a public record information search on Mr. Henderson.

45.     On or about June 18, 2009, USIS sent Mr. Henderson a copy of his consumer report (the "June 18 Report") accompanied by a letter which stated in part that "this letter is notification that the enclosed Public Record Information on [Mr. Henderson] has been ordered and is being provided to [CR England].  This notice is being sent to you pursuant to Section 613 of the Fair Credit Reporting Act."

46.     The June 18 Report comprised over ten pages and USIS deliberately and knowingly reported the expunged cases multiple times.  The June 18 Report states, at page 8, that the AOPC was the Defendant's "source" for the criminal record information.

47.     Around the same time in 2009, Mr. Henderson applied for the position of truck driver with Western Express, Inc. ("Western Express").

48.     Western Express employed Defendant USIS to perform a public record information search on Mr. Henderson.

49.     On or about June 22, 2009, USIS sent Mr. Henderson a copy of his consumer report (the "June 22 Report") accompanied by a letter which stated in part that "this letter is notification that the enclosed Public Record Information on [Mr. Henderson] has been ordered and is being provided to [Western Express].  This notice is being sent to you pursuant to Section 613 of the Fair Credit Reporting Act."

50.     The June 22 Report comprised over ten pages and USIS deliberately and knowingly reported the expunged cases multiple times.  The June 22 Report states, at page 8, that the AOPC was the Defendant's "source" for the criminal record information.

51.     Mr. Henderson was notified by prospective employers that, as a result of the review of the inaccurate public record information reports supplied by Defendants, he would not be considered for employment.

52.     Defendants failed to search for updated public record information on Mr. Henderson's expunged criminal cases, because the only source of information that they could have obtained in the time frames in which they produced the reports was the AOPC database, from which the cases had been hidden from public view by the time that the reports were compiled.

53.     In preparing Mr. Henderson's reports in June 2009, Defendants did not search public records in which Mr. Henderson's cases had not yet been expunged.

54.     Defendants' background reports prepared in June 2009 list the source of the expunged cases as AOPC, even though these cases had been eliminated from public view on the AOPC website before the reports were compiled because of the Expungement Orders.

55.     Defendants have asserted that, subsequent to June 22, 2009, they "reinvestigated" the disputed information and that they performed additional background checks on Plaintiff and reported the results, without the expunged records, to prospective employers.

56.     Plaintiff does not assert, under section 1681i of the FCRA, that Defendants failed to reinvestigate disputed information.

57.     A CRA's duty under section 1681k to maintain strict procedures to insure that public record information is complete and up to date is absolute and not dependent on whether a consumer knows of or disputes inaccurate information.  The requirements of section 1681k have nothing to do with a CRA's duty to reinvestigate disputes under section 1681i.  In other words, the FCRA does not require consumers to wait to have inaccurate public record information reported about them and to then dispute the inaccuracies.

58.     That Defendants may have subsequently corrected their earlier practice of not maintaining strict procedures to insure complete and up to date public record information does not negate or absolve them from their deliberate and knowing reporting of the expunged records to prospective employers prior to changing their practices.

59.     In fact, well after this case was filed and Defendants' violations of law were brought to their attention, Defendants continue to demonstrate their lack of understanding of public record information.  In their motion to dismiss filed on April 5, 2010 (Doc. 7), Defendants claim that Plaintiff's expunged information "is still publicly available from the on-

line criminal docket." Doc. 7-2 at 3. That is not true. Defendants have confused the expunged case with a different case that was not expunged, and that remains of record.

60.     Defendants' practices and procedures described herein affected not only the Plaintiff but also other applicants for employment who had obtained the expungement or removal of criminal charges that were nonetheless deliberately and knowingly reported by Defendants to prospective employers.

61.     At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

62.     At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## V.     CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action individually and as a class action for Defendants' willful violation of sections 1681k and 1681e(b) of the FCRA, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Class:  All natural persons residing in the United States who were the subject of a consumer report prepared by Defendants within two (2) years prior to the filing of the Complaint who were the subjects of background reports in which expunged criminal charges were reported or to whom Defendants did not provide notice that they were furnishing a consumer report on the persons prior to or contemporaneously with their provision of the report.

64.     The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that the Class numbers in the thousands. Defendants sell criminal history

record information to thousands of businesses throughout the country, and their reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports.

65.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal questions include (a) whether the Defendants willfully violated section 1681k of the FCRA by failing to notify consumers contemporaneously of the fact that criminal record information is being sent to prospective employer, (b) whether Defendants willfully violated section 1681k of the FCRA by failing to maintain strict procedures to assure that the information is complete and up to date, and (c) whether Defendants, by employing a policy and practice of disclosing expunged criminal record histories, willfully violated section 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

66.     Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

67.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter.  Plaintiff has secured counsel experienced in handling consumer class actions.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

68.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of

other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

69.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

70.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small as the maximum statutory damages are limited to $1,000.00 under the FCRA.  Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

## VI.     COUNT ONE - FCRA

71.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

72.     Pursuant to section 1681n of the FCRA, Defendants are each liable for willfully violating the FCRA by engaging in the following conduct:

(a)     Failing to notify consumers contemporaneously of the fact that criminal record information is being provided to prospective employers;

(b)     Failing to maintain strict procedures to assure that the information is complete and up to date;

(c)     Failing to utilize procedures designed to assure maximum possible accuracy of the information they sell to prospective employers.

## VII.    JURY TRIAL DEMAND

73.    Plaintiff demands trial by jury on all issues so triable.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in favor of himself and the Class for the following:

(a)    That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

(b)    That judgment be entered against Defendants for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n(a);

(c)    That judgment be entered against Defendants for punitive damages pursuant to 15 U.S.C. §§ 1679g(a)(2), 1681n(a)(2);

(d)    That the Court award costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1679g(a)(3), 1681n and 1681o; and

(g)    That the Court grant such other and further relief as may be just and proper.


Dated: May 5, 2010                                    Respectfully submitted,

                                                      COMMUNITY LEGAL SERVICES, INC.
                                                      Sharon M. Dietrich
                                                      Janet Ginzberg
                                                      1424 Chestnut Street
                                                      Philadelphia, PA  19102
                                                      215-981-3700

                                                      DONOVAN SEARLES, LLC

                                          By:    *s/ David A. Searles*
                                                      David A. Searles
                                                      1845 Walnut Street, Suite 1100
                                                      Philadelphia, PA 19103
                                                      (215) 732-6067

**FRANCIS & MAILMAN, P.C.**
James A. Francis
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Attorneys for Plaintiff and the Class