IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| O'NEAL HENDERSON, on behalf of himself and all others similarly situated, | : : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| HIRERIGHT SOLUTIONS, INC. and USIS COMMERCIAL SERVICES, INC., | : : : | NO. 10-459 |
| Defendant. | : : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                                            June 7, 2010

Currently pending before the Court is the Motion of Defendant HireRight Solutions, Inc., formerly known as USIS Commercial Services, Inc.[1] to Transfer Venue to the Northern District of Oklahoma Pursuant to 28 U.S.C. § 1404. For the following reasons, the Motion is granted and the case is transferred to the United States District Court for the Northern District of Oklahoma.

I.      FACTUAL AND PROCEDURAL HISTORY

This litigation was initiated as a consumer class action based upon Defendant's willful violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"). (Am. Compl. ¶ 1.) The action is brought on behalf of the thousands of employment applicants throughout the country who have purportedly been the subject of prejudicial, misleading, and inaccurate background reports performed by Defendant and sold to employers. (Id.)

---

[1] Although the Complaint lists these two entities separately, Defendant HireRight Solutions, Inc. has indicated that they are a single entity that has simply changed its name. Accordingly, the Court will refer to both HireRight Solutions, Inc. and USIS Commercial Services, Inc. as one Defendant.

According to the facts set forth in the Amended Complaint, Defendant is a consumer reporting agency ("CRA"), which maintains consumer files containing public record information, including the criminal record history of individuals. (Id. ¶¶ 7, 9.) Defendant sells these consumer files to potential employers – consisting of a customer base of more than 28,000 businesses across the country – wishing to investigate the criminal history of various job applicants. (Id. ¶ 10.) The Complaint alleges that, as a matter of practice, Defendant, in violation of its obligations under the FCRA, neither notifies the consumer contemporaneously of its reporting of adverse public record information, nor maintains strict procedures designed to insure that such information is complete, up-to-date, and accurate, nor utilizes reasonable procedures designed to assure maximum possible accuracy. (Id. ¶ 14.) Moreover, according to the Complaint, Defendant regularly and illegally reports criminal records that have been expunged by court order, so that the individual's criminal history appears more serious than it actually is. (Id.) Such a practice violates the FCRA and exacts serious consequences on consumer job applicants and interstate commerce. (Id. ¶ 15.) By the time the consumer is made aware of the inaccurate reporting, the report has already been sold to the requesting employer and become the basis of an employment decision. (Id. ¶ 16.)

With respect to the named Plaintiff, the Complaint alleges that, in July 1995, Plaintiff O'Neal Henderson was arrested and found guilty of simple assault and resisting arrest. (Id. ¶ 18.) He was sentenced to less than a year of probation. (Id.) In a separate case brought in connection with the July 1995 incident, Plaintiff was found not guilty of three other charges (recklessly endangering another person, simple assault, and resisting arrest), and a charge of aggravated assault was dismissed. (Id. ¶ 19.) Plaintiff was again arrested in January 2007, in connection with an alleged sexual assault, but all charges were withdrawn by the District Attorney. (Id. ¶ 20.) By court orders dated May 18, 2009 (the "Expungement Orders"), the aforementioned charges of which Plaintiff was not convicted were ordered expunged by the Philadelphia County Court of Common

Pleas. (Id. ¶ 21.) Certified copies of these orders were to be served on the Philadelphia Police Department, Expungement Unit; the Pennsylvania State Police, Central Records; the Administrative Office of Pennsylvania Courts Expungement Unit; and the First Judicial District of Pennsylvania, Data Processing Unit. (Id. ¶ 22.) The Expungement Orders further (1) directed the arresting agency to destroy or deliver to Plaintiff or his representative all criminal records, fingerprints, photographic plates, and photographs pertaining to the expunged charges, and (2) directed the Pennsylvania State Police to request that the Federal Bureau of Investigation return to them all records pertaining to the arrests, to be destroyed upon receipt. (Id. ¶ 23.)

In Pennsylvania, the public sources of information from which a CRA can obtain information used for a criminal background check are maintained by the Administrative Office of the Pennsylvania Courts ("AOPC") and the Pennsylvania State Police ("PSP"). (Id. ¶ 25.) The AOPC website allows free and immediate public access to criminal court records. (Id. ¶ 26.) Generally, expunged criminal charges in Philadelphia are hidden from public view in AOPC's database within days of an expungement order. (Id. ¶ 30.) Plaintiff's expunged charges were removed from public view in AOPC's database by no later than June 5, 2009. (Id. ¶ 31.) A request from information from the PSP database, on the other hand, costs $10.00 and, if there are arrests or convictions, there will be a delay time of at least two to three weeks before a response is given. (Id. ¶ 27.) Defendant utilizes the AOPC database as a "source" in connection with their compilation and sale of background reports on consumers. (Id. ¶ 29.)

Between June 4, 2009 and June 22, 2009, Defendant prepared a series of criminal background check reports on Plaintiff. (Id. ¶ 24.) Specifically, in May 2009, Plaintiff applied for truck driver positions with Road Link USA, Prime, Inc., CR England, Inc., and Western Express, Inc. (Id. ¶¶ 34, 39, 43, 47.) These prospective employers all hired Defendant to perform public record information searches on Plaintiff. (Id. ¶ 35, 40, 44, 48.) On June 4, June 10, June 18, and

June 22, 2009, respectively, Defendant sent Plaintiff a copy of the requested reports, together with letters stating that "this letter is notification that the enclosed Public Record Information on [Plaintiff] has been ordered and is being provided to [the requesting employer]. This notice is being sent to you pursuant to Section 613 of the Fair Credit Reporting Act." (Id. ¶ 36, 41, 45, 49.) The reports were each over ten pages long and reported the expunged cases multiple times, indicating that the AOPC was Defendant's "source" for the criminal record information. (Id. ¶ 37, 42, 46, 50.) After the initial report dated June 4, 2009, Plaintiff's attorney had sent Defendant a letter on June 9, 2009, enclosing copies of the Expungement Orders and demanding that Defendant immediately remove the expunged cases from their databases and not report them in future reports, but apparently to no avail. (Id. ¶ 38.) Ultimately, Plaintiff was notified by the prospective employers that, as a result of their review of the information in the reports, he would not be considered for employment. (Id. ¶ 51.) Defendant later asserted that, subsequent to June 22, 2009, it "reinvestigated" the disputed information and, in all future background checks on Plaintiff, it reported the results without the expunged records. (Id. ¶ 55.)

Plaintiff initiated the current federal action on December 17, 2009 alleging that Defendant willfully violated the Fair Credit Reporting Act by: (1) failing to notify consumers contemporaneously of the fact that criminal record information is being provided to prospective employers; (2) failing to maintain strict procedures to assure that the information is complete and up to date; and (3) failing to utilize procedures designed to assure maximum possible accuracy of the information it sells to prospective employers. (Id. ¶ 72(a-c).) In addition, the Complaint defined a prospective class of

> [a]ll natural persons residing in the United States who were the subject of a consumer report prepared by Defendants within two (2) years prior to the filing of the Complaint[,] who were the subjects of background reports in which expunged criminal charges were reported or to whom Defendants did not provide notice that they were furnishing a consumer report on the persons prior to or contemporaneously with their provision of the report.

(Id. ¶ 63.) Defendant moved to dismiss the Complaint on April 5, 2010 and, in response, Plaintiff sought leave to amend its Complaint *nunc pro tunc*. On June 1, 2010, the Court granted Plaintiff leave to file the Amended Complaint and denied the Motion to Dismiss as moot.

On April 30, 2010, Defendant filed the present Motion to Transfer Venue to the Northern District of Oklahoma Pursuant to 28 U.S.C. § 1404, Plaintiff responded on May 14, 2010, and Defendant submitted a Reply Brief on May 24, 2010. The Court now considers the merits of this Motion.

**II.   DISCUSSION**

In the related case of Smith v. HireRight Solutions, Inc., No.CIV.A. 09-6007 (E.D. Pa.), this Court considered an identical Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 to the United States District Court for the Northern District of Oklahoma. That case was similarly brought as a class action, but on behalf of "[a]ll natural persons residing in the United States who were the subject of a consumer report prepared by Defendants within two (2) years prior to the filing of the Complaint[,] *who were the subjects of background reports in which criminal cases were duplicatively reported*[,] and to whom Defendants did not provide notice that they were furnishing a consumer report on the persons prior to or contemporaneously with their provision of the report." (Compl., Smith v. HireRight Solutions, No. CIV.A.09-6007, ¶ 36, (E.D. Pa. Dec. 17, 2009) (emphasis added).) That case set forth the identical allegations that Defendant willfully violated the FCRA by: (1) failing to notify consumers contemporaneously of the fact that criminal record information is being provided to prospective employers; (2) failing to maintain strict procedures to assure that the information is complete and up to date; and (3) failing to utilize procedures designed to assure maximum possible accuracy of the information it sells to prospective employers. (Id. ¶ 45(a-c).) The parties' briefs regarding the Motion to Transfer in that case were virtually identical to

the ones before the Court in the present matter.

By way of a lengthy opinion that fully summarized the applicable law, this Court granted the Motion to Transfer the Smith case. (Opinion, Smith v. HireRight Solutions, No. CIV.A.09-6007 (E.D. Pa. June 7, 2010.)  In doing so, the Court observed that the case was a nationwide class action focusing almost entirely on the actions of the corporate Defendant, which had its principal place of business in Tulsa, Oklahoma. (Id. at 6-9.)  The Court also noted that almost all of the relevant witnesses and records were present in Oklahoma. (Id. at 10-16.)  Finally, the Court found that practical considerations that would make the trial easier and less expensive, as well as issues of court congestion, all favored a transfer to Oklahoma. (Id. at 17-19.)

In light of the fact that this case is also a nationwide class action alleging violations of the FCRA by the identical Defendant, those same considerations similarly weigh in favor of transfer of this case to Oklahoma. In lieu of repeating the law and analysis set forth in that Opinion, the Court incorporates it herein by reference.

Only two of the § 1404 factors merit separate discussion here. First, Plaintiff contends that convenience of witnesses favors retaining the case in this District. Plaintiff argues that there may be local non-party witnesses, such as personnel from the Philadelphia court system, the Pennsylvania State Police, and the Administrative Office of Pennsylvania Courts, which maintains the database that Defendants regularly use, "or at least should be using." (Pl.'s Resp. Mot. Transfer 10.)  Facing the same argument in Smith, this Court previously reasoned that such local witnesses would be irrelevant to the case since the complaint did not challenge the accuracy of the information received from those sources, but rather Defendant's duplicative reporting of that information. (Id. at 15-16.)  To the contrary, in the present matter, these local witnesses will be significantly more relevant since there will likely be issues of fact as to how expunged criminal records are reported and/or removed from public access. Nonetheless, this factor still does not persuade the Court to deny transfer.

Given that this case is brought as a nationwide class action, there could conceivably be similar local witnesses hailing from all fifty states, who could present relevant testimony. Nothing in the Complaint makes the testimony of the Pennsylvania witnesses of greater import than that of the other states' witnesses.

The second factor that the Court separately discusses is what "practical considerations" could make the trial easy, expeditious, or inexpensive. As noted above, the Smith case, which is a related class action, has already been transferred to the United States District Court for the Northern District of Oklahoma. "The interests of justice strongly favor transfer of a case to another jurisdiction where a related matter is pending." LG Elec., Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 592 (D.N.J. 2001) (citing Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, 536 (D.N.J. 2000); Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 453-54 (D.N.J. 1999); Ayling v. Travelers Prop. Cas. Corp., No. CIV.A.99-3243, 1999 WL 994403, at *3 (E.D. Pa. Oct. 27, 1999); Am. Bio Medica Corp. v. Penninsula Drug Analysis Corp., No. CIV.A.99-218, 1999 WL 615175, at *5 (D. Del. Aug. 3, 1999)). Accordingly, this factor supports transfer.

In sum, for all of the reasons set forth in the Court's previous opinion in Smith v. HireRight, as well as the additional reasons enumerated in this decision, the Court grants Defendant's Motion and transfers this matter to the United States District Court for the Northern District of Oklahoma. An appropriate order follows.