IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

O'NEAL HENDERSON,                    §
                                     §
          Plaintiff,                 §
                                     §
vs.                                  §        NO. 4:10-CV-443-GKF-TLW
                                     §
HIRERIGHT SOLUTIONS, INC., f/k/a     §        **BASE CASE**
USIS COMMERCIAL SERVICES, INC.,      §
                                     §
          Defendant.                 §        HONORABLE GREGORY K.
                                     §        FRIZZELL
                                     §
                                     §

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HIRERIGHT
SOLUTIONS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING
ITS MOTION TO DISMISS IN THE *SMITH* ACTION**

TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ....................................................................................... 1

II.     PROCEDURAL POSTURE ........................................................................ 4

III.    LEGAL FRAMEWORK ............................................................................. 5

        A.   The Legal Standard For Reconsideration .......................................... 5

        B.   The Legal Standard For Dismissal .................................................... 6

        C.   The Legal Standard For Willfulness Under *Safeco* ........................... 6

IV.     THE COMPLAINT .................................................................................... 9

V.      THE COURT'S MAY 12, 2010 ORDER .................................................. 10

VI.     ARGUMENT ............................................................................................ 12

        A.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION
             1681e(b) BECAUSE IT IS NOT CLEARLY ESTABLISHED THAT THE
             ALLEGED CONDUCT VIOLATES THE FCRA ........................................... 12

        B.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR
             WILLFUL VIOLATION OF § 1681k BECAUSE HE FAILS TO EVEN
             ALLEGE A VALID PREDICATE CLAIM UNDER § 1681k(a)(2) ................. 19

VII.    CONCLUSION .......................................................................................... 21

TABLE OF AUTHORITIES

PAGE

## CASES

*Anderson v. Creighton*, 483 U.S. 635 (1987) .......................................................................... 16

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ......................................................................... 4, 20

*Bailey v. United States*, 516 U.S. 137 (1995) ....................................................................... 20

*Been v. O.K. Indus.*, 495 F.3d 1217 (10th Cir. 2007) .............................................................. 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544  (2007) ............................................................ 4

*Cagle v. Gilley*, 957 F.2d 1347 (6th Cir. 1992) ..................................................................... 17

*Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) ................... 13, 14

*Cf. Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314 (11th Cir. Ga. 2009) .............. 2, 17

*Christy Sports LLC v. Deer Valley Resort Co.*, 555 F.3d 1188 (10th Cir. 2009) ......................... 6

*Davenport v. Sugar Mt. Retreat, Inc.*, 2009 U.S. Dist. LEXIS 98472 (N.D. Okla. Oct. 16, 2009) ............................................................................................................... 6

*Dickens v. Trans Union Corp.,* 18 Fed. Appx. 315 (6th Cir. 2001) ........................................ 14

*Garrett v. Trans Union*, 2006 U.S. Dist. LEXIS 73395 (S.D. Ohio Sept. 29, 2006). .............................................................................................................................. 14

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) ................................... 16

*Hall v. Thomas*, 190 F.3d 693 (5th Cir. 1999) ..................................................................... 17

*Heupel v. Trans Union*, 193 F. Supp. 2d 1234 (N.D. Ala. 2002) ........................................... 14

*Holmes v. TeleCheck Int'l, Inc.*, 556 F. Supp. 2d 819 (M.D. Tenn. 2008) ............................. 14

*In re: Farmers Ins. Co., Inc, FCRA Lit.*, 2010 U.S. Dist. LEXIS 99476 (W.D. Okla. Sept. 20, 2010) ......................................................................................................... 18

*Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638 (S.D. Ala. 2007) ........................................... 14

*Kohut v. Trans Union, LLC*, 2004 U.S. Dist. LEXIS 15724 (N.D. Ill. Aug. 9, 2004) ................................................................................................................................ 17

*Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984) .......................................... 16

*Laney v. Schneider Nat'l Carriers, Inc.*, 259 F.R.D. 562 (N.D. Okla. 2009) ............................ 5

*Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990) ................................................................. 15

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ........................................................................... 17

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. (1983) ................................. 5

*Murray v. New Cingular Wireless Services, Inc.*, 532 F.3d 719 (7th Cir. 2008) ................... 3, 17

*Nelson v. Am. Express Travel Related Servs.*, 2009 U.S. Dist. LEXIS 129787 (N.D. Ala. June 17, 2009) ........................................................................................................ 14

*Pearson v. Callahan*, 129 S. Ct. 808 (2009) .......................................................................... 7

*Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40 (1st Cir. 1994) ....................................................... 5

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Pinson v. Equifax Credit Info. Servs., Inc.*, 316 Fed. Appx. 744 (10th Cir. 2009) ..................... 13

*Russello v. United States*, 464 U.S. 16 (1983) ......................................................... 15

*Saucier v. Katz*, 533 U.S. 194 (2001) ..................................................................... 7

*Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008) ..................... 16

*Semgroup Energy Partners, L.P., Secs. Litig.*, No. 08-MD-1989, 2010 U.S. Dist.
LEXIS 77328 (N.D. Okla. July 30, 2010) (Frizell, J.) ............................................... 5

*Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890 (5th Cir. 1998) ......................................... 16

*Sheffer v. Experian Info. Solutions, Inc*., No. Civ. 02-7404, 2003 WL 21710573
(E.D. Pa. Jul. 24, 2003) ................................................................................. 3, 11

*Shlahtichman v. 1-800 Contacts, Inc.*, 2010 U.S. App. LEXIS 16484, (Aug. 10,
2010) ............................................................................................... 14, 15

*Todd v. Associated Credit Bureau Servs., Inc.,* 451 F. Supp. 447 (E.D. Pa. 1977),
*aff'd*, 578 F 2d 1376 (3rd Cir. 1978) ............................................................... 14

*Warren v. Am. Bankers Ins.*, 507 F.3d 1239 (10th Cir. 2007) ....................................... 5

*Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999) ...................................................... 17

*Wilson v. Layne*, 526 U.S. 603 (1999) ........................................................................ 17

## STATUTES AND STATUTES

15 U.S.C. § 1681a(d)(2)(A)(iii) ........................................................................... 15

15 U.S.C. § 1681b(b)(2)(A)(i) ............................................................................. 15

15 U.S.C. § 1681e(b) ................................................................................... 9, 15

15 U.S.C. § 1681k(a) .................................................................................. 19, 20

15 U.S.C. § 1681s-2(e) .................................................................................... 16

16 C.F.R. Pt. 660, § 660.2(a) ........................................................................... 16

42 U.S.C. § 1983 ........................................................................................... 7

Fed. R. Civ. P. 54(b) ...................................................................................... 5

Defendant HireRight Solutions, Inc., f/k/a USIS Commercial Services, Inc. ("HireRight Solutions"), submits this brief in support of its Motion for Reconsideration of the May 12, 2010 Order of the Eastern District of Pennsylvania denying its Motion to Dismiss (the "May 12 Decision"). (*Smith* Docket 21.)  Plaintiff claims that HireRight Solutions "willfully" violated the Fair Credit Reporting Act ("FCRA") by reporting information about his criminal records that – while factually accurate – was allegedly reported in a misleading format.  Respectfully, the Eastern District committed clear legal error by refusing to dismiss Plaintiff's willfulness claim despite the acknowledged circuit court split over whether such technically accurate information can ever be "inaccurate" within the meaning of the FCRA.  Because the law underlying Plaintiff's FCRA claim was not clearly established at the time that HireRight Solutions provided the challenged background reports (as evidenced by the circuit court split), the U.S. Supreme Court's decision in *Safeco Ins. v. Burr*, 551 U.S. 47 (2007) precludes a finding of willfulness as a matter of law.  Consequently, Plaintiff's Complaint alleging that HireRight Solutions willfully violated Sections 1681e(b) and 1681k of the FCRA must be dismissed.

## I.     INTRODUCTION

Defendant HireRight Solutions provides background reports for employment purposes. Plaintiff Bahir Smith ("Plaintiff") was arrested in 2006 and ultimately pled guilty to defiant trespass and public drunkenness (Compl. ¶ 18).  Plaintiff alleges in a single Count that HireRight Solutions violated Sections 1681e(b) and 1681k of the FCRA by furnishing inaccurate background reports to his prospective employers without providing him timely notice.  Plaintiff alleges that these background reports were inaccurate because they repeated (otherwise accurate) criminal records in a way that he contends made his criminal record appear more extensive than it is.  Plaintiff asserts this FCRA claim on his own behalf and on behalf of a putative nationwide class of consumers.  Plaintiff does not seek damages from loss of employment or other harm to

him personally.   Rather, he seeks to recover class-wide statutory damages for alleged willful violations of Sections 1681e(b) and 1681k under Section 1681n.

Section 1681n permits enhanced recovery for willful violations of the FCRA, but only if the plaintiff can allege and ultimately prove *both* the predicate violation of the FCRA and that the violation was knowing or reckless (i.e., objectively unreasonable).   *Safeco Ins. Co.*, 551 U.S. at 69.   HireRight Solutions moved to dismiss the Complaint arguing, *inter alia*, that Plaintiff's Complaint fails to meet this standard.   Under *Safeco*, where corporate policies trigger FCRA violations, the willfulness standard is not satisfied unless the law underlying the violation was clearly established at the time of the challenged conduct.   Indeed, the Supreme Court in *Safeco* reversed the Ninth Circuit's remand for factual development and held that the plaintiffs' class-wide willfulness claims failed as a matter of law because the applicable law (under Section 1681m(a)) was not clearly established at the time material to the lawsuit.

In moving to dismiss, HireRight Solutions argued that *Safeco* similarly requires dismissal of Plaintiff's willfulness claim here because there is a reasonable reading of the statute under which the challenged conduct would not violate Section 1681e(b).   HireRight Solutions explained that the FCRA term underlying Plaintiff's claim – "accuracy" – is not defined in the statute and has been subject to competing interpretations by several circuit courts – one interpretation endorsing "technical accuracy" (the view that a factually correct report is always legally accurate) and the other holding that a factually correct report can be inaccurate if the information is presented in a misleading manner.   The Eastern District acknowledged the circuit split, but erroneously proceeded to analyze the *merits* of Plaintiff's claim under its view of where the Third Circuit would weigh in on the question.   *Cf. Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318-1319 (11th Cir. Ga. 2009) (holding the defendant consumer reporting

– Page 2

agency did not willfully violate the FCRA as a matter of law because the statutory term "account" was ambiguous and the agency followed one of two lines of authority); *Murray v. New Cingular Wireless Services, Inc.*, 532 F.3d 719, 725-727 (7th Cir. 2008) (reaching the same conclusion with regard to the agency's construction of the term "conspicuous").  Compounding its error, the Eastern District elected not to follow *Safeco*'s rationale because (i) *Safeco* was decided at the summary judgment stage, and (ii) the Eastern District did not think reasonable minds could disagree on the interpretation of the term "accuracy" (despite that federal courts have done precisely that).

It was clear legal error for the Eastern District to refuse to follow *Safeco*.  The procedural posture of Plaintiff's case does not materially distinguish it from *Safeco* – as the Eastern District erroneously reasoned – because the claim against Safeco was not adjudicated based upon the factual record, but rather based upon a pure question of law: whether "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation."  551 U.S. at 70 n. 20.  Indeed, if the Eastern District's erroneous analysis were to be accepted, it would have the effect of changing the outcome reached by the Supreme Court in *Safeco*.  Applying the Eastern District's view, Safeco's knowing and repeated reliance on credit reports in setting initial insurance rates without notifying consumers should have precluded judgment in favor of Safeco because more than "'an isolated instance of human error'" was involved.  (Slip Op. at 11 (quoting *Sheffer v. Experian Info. Solutions, Inc.*, No. Civ. 02-7404, 2003 WL 21710573, at *3 (E.D. Pa. Jul. 24, 2003)).)  In reaching the opposite result despite Safeco's "repeated engagement in the same type of objectionable conduct" (Slip Op. at 11; *see Safeco*, 551 U.S. at 54, 68 (the alleged conduct was the result of a deliberate policy applied to numerous customers that the Court assumed resulted in violation of the FCRA)), the Supreme Court in fact concluded "it is

– Page 3

clear enough that if Safeco did violate the statute, the company was not reckless in falling down in its duty." *Safeco*, 551 U.S. at 68.

The same is true here and, thus, *Safeco* requires dismissal of Plaintiff's claim because – regardless of how the Third Circuit (or even the Tenth Circuit) might ultimately resolve the circuit split – the law cannot be said to have been clearly established at all times material to Plaintiff's Complaint.

It was also clear legal error for the Eastern District to refuse to dismiss Plaintiff's claim under Section 1681k. As explained below, Plaintiff fails to allege a predicate violation under Section 1681k, much less a willful violation.

In sum, this Court should grant reconsideration and dismiss the Complaint. The prejudice to HireRight Solutions from the Eastern District's May 12 Order is manifest because Plaintiff seeks to prosecute sweeping claims on behalf of a nationwide class of consumers. Because the issue of willfulness should be decided as a matter of law, there is no basis for allowing Plaintiff to take discovery. *See generally Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage").

**II.     PROCEDURAL POSTURE**

Three weeks after the May 12 Order, the Eastern District granted HireRight Solutions' Motions to Transfer Venue in the *Smith* and *Henderson* actions. (*Smith* Docket 29; *Henderson* E.D. Pa. Docket 28.) The files were transferred in mid-July 2010. (*Smith* Docket 30; *Henderson* N.D. Okla. Docket 1.) *Smith* was assigned to Chief Judge Eagan, and *Henderson* was assigned to this Court. On July 30, 2010, Plaintiffs moved to consolidate both cases before Chief Judge

Eagan.  (*Smith* Docket 41; *Henderson* N.D. Okla. Docket 49.)  On August 19, 2010, the parties

filed a consent order to consolidate the cases with Judge Eagan for all pre-trial purposes.  (*Smith*

Docket 62.)  On August 25, 2010, the cases were consolidated and *Smith* was *sua sponte*

reassigned to this Court.  (*Smith* Docket 65.)

## III.    LEGAL FRAMEWORK

### A.    The Legal Standard For Reconsideration

"[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."

*Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007).  A motion for reconsideration should

be granted where a court has misapprehended the facts, a party's position, or the controlling law

in resolving a previous motion, and the court's misapprehension results in clear error or manifest

injustice.  *In re Semgroup Energy Partners, L.P., Secs. Litig.*, No. 08-MD-1989, 2010 U.S. Dist.

LEXIS 77328, at *10 (N.D. Okla. July 30, 2010) (Frizell, J.).  A district court may reconsider an

interlocutory order denying a motion to dismiss at any time before the entry of judgment.  Fed.

R. Civ. P. 54(b); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 & n.14

(1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the trial

judge"); *see also* 18B Charles A. Wright *et al.*, Fed. Prac. & Proc. (2002 & 2010 Supp.), §

4478.1, at 698-99 ("Denial of a motion to dismiss may be followed by an order granting

dismissal."); *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders,

including denials of motions to dismiss, remain open to trial court reconsideration, and do not

constitute law of the case.").  The Tenth Circuit has explained that "a district court always has

the inherent power to reconsider its interlocutory rulings, and we encourage a court to do so

where error is apparent."[1]  *Warren v. Am. Bankers Ins.*, 507 F.3d 1239, 1243 (10th Cir. 2007).

---

[1]  This Court may revisit the May 12 Order even though it was issued by a different district court judge.  *Laney v. Schneider Nat'l Carriers, Inc.*, 259 F.R.D. 562, 568 (N.D. Okla. 2009) (granting motion to reconsider).

### B.    The Legal Standard For Dismissal

A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted); *Christy Sports LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191-92 (10th Cir. 2009) (affirming dismissal of claim where the plaintiff failed to plead a "plausible claim").  A claim has "facial plausibility" when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  *Iqbal* stressed that it is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability. *Id.*; *see also Davenport v. Sugar Mt. Retreat, Inc.*, 2009 U.S. Dist. LEXIS 98472, *6-7 (N.D. Okla. Oct. 16, 2009) (dismissing complaint).  "*Twombly* recognized that discovery can be expensive, and that 'the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage.'" *Bixler*, 596 F.3d at 762 (citing *Twombly*, 550 U.S. at 558-59).

### C.    The Legal Standard For Willfulness Under *Safeco*

In *Safeco*, the plaintiff insurance applicants sued (in two cases) two insurers (GEICO and Safeco) for violation of the FCRA's "adverse action" notice provision, Section 1681m(a).  As here, the plaintiffs sought to recover under Section 1681n for allegedly willful violations of Section 1681m(a).  The district courts granted summary judgment to GEICO and Safeco.  The Ninth Circuit reversed both judgments.  The Ninth Circuit ruled in the *GEICO* case that willfulness can be established with reckless disregard of a consumer's rights under the FCRA.  The Ninth Circuit remanded the case for further proceedings concerning the "undisclosed circumstances surrounding GEICO's revision of its notification policy."  551 U.S. at 56.  Relying

on its decision in *GEICO*, the Ninth Circuit also remanded the Safeco case for further factual development and application of the willfulness standard.

The Supreme Court consolidated the cases to resolve a split among the courts of appeals on the standard for willfulness under Section 1681n.  The Supreme Court agreed with the Ninth Circuit that reckless disregard qualifies as a willful violation within the meaning of Section 1681n, but reversed the Ninth Circuit in both cases.  The Court held that GEICO's conduct did not violate the FCRA and even if Safeco's did, its conduct clearly was not willful under Section 1681n.  In finding for Safeco, the Court explained that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.  The Court reasoned that Congress intended enhanced penalties only for conduct that is objectively inconsistent with any reasonable reading of the FCRA and further explained that:

> Safeco's reading of the statute, albeit erroneous, was not objectively unreasonable. . . .  While we disagree with Safeco's analysis, we recognize that its reading has a foundation in the statutory text and a sufficiently convincing justification to have persuaded the District Court to adopt it and rule in Safeco's favor.

*Id*. at 69-70.  The Court noted that there was no binding guidance from the circuit courts or the Federal Trade Commission ("FTC") suggesting that setting an initial insurance rate might be considered an increase.  *Id*. at 70.  (An informal staff opinion from the agency with enforcement authority contrary to Safeco's position did not change the analysis because it was non-binding and did not comprehensively analyze the issue.  *Id*. at 70 n. 19.)  In explaining the significance of the state of the law, the Court cited *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S. Ct. 808 (2009), a case arising under 42 U.S.C. § 1983, which the Court described as "assessing, for qualified immunity purposes, whether an action was

reasonable in light of legal rules that were '*clearly established*' at the time." *Id.* (emphasis added).   According to the Court: "[g]iven this dearth of guidance and the less-than-pellucid statutory text, Safeco's reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Id.*

The Court further explained that claims for "knowing" FCRA violations are limited to situations in which the defendant's interpretation of the statute is objectively unreasonable. *Id.* at 70 n. 20.  Safeco's conduct was not objectively unreasonable because the law was insufficient to warrant a finding that Safeco "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.   This holding had nothing to do with the factual record, which although muddled (*see id.* at 68 ("the record does not reliably indicate what rates [defendants] would have obtained if their credit reports had not been considered . . . .")), was not pertinent to the Court's rationale.  Indeed, the Court concluded there was no need "to remand the cases for factual development." *Id.* at 71.  This conclusion followed from the Court's holding that willfulness is an objective assessment and evidence of the defendant's subjective bad faith is therefore immaterial. *See id.* at 70 n. 20 ("To the extent that they argue that evidence of subjective bad faith can support a willfulness finding even when the company's reading of the statute is objectively reasonable, their argument is unsound.").

In summary, *Safeco* established a threshold and purely legal question in willful violation cases: whether the defendant's conduct, even if wrong, was objectively unreasonable (i.e., contravened clearly established law).  Unless the answer to the threshold question is No, the willfulness claim may not proceed.

### IV.     THE COMPLAINT

Plaintiff alleges that in February 2006 he was arrested as a result of an incident that took place in Lancaster County, Pennsylvania.  (Compl., ¶ 18.)  Plaintiff claims that according to the public record information from the Lancaster County Court of Common Pleas, this incident was resolved by his guilty plea to two summary offenses (defiant trespass and public drunkenness), by two misdemeanors (terroristic threats and simple assault) being *nolle prossed*, and by a felony charge of burglary being dismissed.  (*Id.*.)

Plaintiff alleges that during early 2009, he applied for a commercial truck driver position with Hirschbach Motor Lines.  (Compl., ¶ 22.)  Hirschbach ordered a criminal background report about Plaintiff from HireRight Solutions.  (Compl., ¶ 23.)  On March 4, 2009, Plaintiff received from HireRight Solutions a copy of the background report for Hirschbach and a letter which said that it was providing the report to Hirschbach.  (Compl., ¶ 24.)  The background report that HireRight Solutions provided to Plaintiff reflected his February 2006 case multiple times. (Compl., ¶ 25.)  Plaintiff alleges similar facts with respect to his applications for commercial truck driving positions with Annett Holdings, Inc. and Napa Transportation, Inc.   (Compl., ¶¶ 26-33.)

Plaintiff alleges: "Based on a common policy, Defendants regularly report a single incident multiple times, so that the individual's criminal record history appears much more serious than it actually is."  (Compl., ¶ 14.)  Plaintiff claims that HireRight Solutions willfully violated the FCRA, *inter alia*, by: "failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" (15 U.S.C. § 1681e(b)).  (Compl., ¶¶ 38; 45.)

Plaintiff seeks to represent a nationwide class of consumer and to recover statutory damages under Section 1681n of $100 to $1,000 per violation per consumer, punitive damages,

and costs and attorneys' fees.[2]  (*See* Compl. ¶ 42; "Prayer for Relief".)  Plaintiff does not allege

any actual damages or an alternate negligent violation claim under Section 1681o.

## V.  THE COURT'S MAY 12, 2010 ORDER

HireRight Solutions' motion argued that Plaintiff fails to allege a valid claim for willful

violation of Section 1681e(b) because, even if its reports about Plaintiff are found to be legally

inaccurate, the reporting of factually correct information is not "objectively unreasonable" under

*Safeco*.  HireRight Solutions cited the Eastern District to circuit court authority holding that a

consumer report with factually correct information is *not* legally inaccurate even if allegedly

misleading.  (MTD at 8-13.)  Under *Safeco*, HireRight Solutions argued, the Complaint must be

dismissed.

Although the Eastern District expressly acknowledged the split of authority concerning

the interpretation of the term "accuracy" under Section 1681e(b) (Slip Op. at 8 n. 5), it denied the

motion.  The Eastern District concluded – despite the acknowledged circuit split – that "the

statutory text at issue here has a plain and clearly ascertainable meaning" (Slip Op. at 12), and

that the decision to include repeated information in Plaintiff's reports "could, under the statute's

plain language, be an objectively unreasonable interpretation."  (Slip Op. at 13-14.)  The issue

for decision by the Eastern District was whether a consumer reporting agency can act in an

objectively unreasonable manner where, as here, it adopts a construction of the FCRA that finds

support in the statutory text and in federal case law, even if some federal courts have adopted a

different construction of the same statutory provision.  The issue was not whether one line of

cases interpreting the term "accuracy" is right and the other is wrong.  The Eastern District

---

[2]  The proposed class is defined as: "All natural persons residing in the United States who were the subject of a consumer report prepared by Defendants within two (2) years prior to the filing of this Complaint who were the subjects of background reports in which criminal cases were duplicatively reported and to whom Defendants did not provide notice that they were furnishing a consumer report on the persons prior to or contemporaneously with their provision of the report."  (Compl., ¶ 36.)

misapprehended the legal standard under *Safeco* and, as a result, committed clear legal error by failing to analyze the significance of the circuit court split for purposes of Section 1681*n*, rather than Section 1681*e(b)*.  This is evident from the Eastern District's statement:

> Indeed, as noted above, the mere fact that the information in the report was technically accurate does not necessarily absolve Defendant from the harm caused by presenting the information in a misleading fashion.  [Citations]  Accordingly, the Court finds that Defendant's decision to include, either intentionally or recklessly, multiple listings for Plaintiff's single criminal offense could, under the statute's plain language, be an objectively unreasonable interpretation.

(Slip Op. at 13-14 [citations omitted].)

Fundamentally, the Eastern District missed the point that the statutory text is *not* clear and is subject to competing interpretations.  In turn, that mistake resulted in clear legal error by the Eastern District.  The Eastern District compounded its error by misconstruing the standard for willfulness, implying that standard is satisfied by anything more than "isolated instances of human error which the defendant promptly cured."  (Slip Op. at 11 and 15 n. 8 (quoting *Sheffer v. Experian Info. Solutions, Inc.*, No. Civ. 02-7404, 2003 WL 21710573 (E.D. Pa. Jul. 24, 2003)).)  To the contrary, *Safeco* held that the defendant's *systemic* non-compliance was *not, and could not have been,* willful as a matter of law.  *Safeco*, 551 U.S. at 69-70.

## VI.   ARGUMENT

Plaintiff alleges that HireRight Solutions issued three background reports about him that unlawfully included repeated references to his criminal record.  Plaintiff does not allege that any of the information reported was untrue or incomplete.  Instead, he alleges that the background reports possibly could have misled prospective employers who did not realize the redundancy. Plaintiff does not claim that Hirschbach Motor Lines, Annett Holdings or Napa Transportation in fact rejected his application based on his background reports, much less due to any alleged misunderstanding of the records contained within those background reports, and he did not prior to bringing suit ask HireRight Solutions to remove the redundant entries from his record.

The questions raised by HireRight Solutions' motion are purely legal.  First, was it clearly established when the subject background reports were issued that a consumer report with redundant yet factually accurate information is not "accurate" within the meaning of Section 1681e(b)?  Second, has Plaintiff stated a claim for willful violation under Section 1681k?

The answer to the first question, as explained below, is that this definition of the term "accuracy" was not clearly established when the conduct at issue is alleged to have occurred (and it remains an open question subject to reasonable disagreement today).  As a result, *Safeco* requires dismissal of Plaintiff's claim for willful violation of the FCRA.  The answer to the second question is that Plaintiff has failed to state a claim for violation of Section 1681k, much less a willful violation.

### A.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 1681e(b) BECAUSE IT IS NOT CLEARLY ESTABLISHED THAT THE ALLEGED CONDUCT VIOLATES THE FCRA.

A prerequisite to stating a claim under Section 1681e(b) is that the consumer report at issue must be inaccurate within the meaning of the FCRA.  A plaintiff cannot prevail on a

Section 1681e(b) claim unless he first alleges facts that show the allegedly unreasonable procedures in fact led to the issuance of an inaccurate background report about him.

> In order to make out a prima facie violation of section 607(b), the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information.  If he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of section 607(b), and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency.

*Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *see also Pinson v. Equifax Credit Info. Servs., Inc.*, 316 Fed. Appx. 744, 751 (10th Cir. 2009) ("Because the Pinsons have cited no evidence indicating that Experian's credit reports were inaccurate, Experian was entitled to summary judgment.").

Plaintiff's theory is that his background reports were inaccurate – not because they contained factually inaccurate information, but because criminal record information was reported more than once.  Although Plaintiff does not allege that any prospective employer rejected his application based on his background reports, much less due to any alleged misunderstanding of the records contained within those background reports, he argues that the duplication of otherwise factually accurate information rendered the reports potentially misleading and, therefore, inaccurate.

As in *Safeco*, no court of appeals has ruled that factually correct but redundant reports can be legally inaccurate.  Nor has the FTC provided authoritative guidance to this effect. Moreover, as in *Safeco*, where the statutory language at issue was deemed "less-than-pellucid" (551 U.S. at 70), courts have long recognized that "[a]ccuracy is quite clearly not a self-defining concept, and FCRA's fragmentary legislative history provides little, if any, guidance as to how Congress intended this standard to be applied."  *Cahlin*, 936 F.2d at 1157.

This lack of clarity is precisely why the federal courts have split in interpreting the term "accuracy" in analogous contexts. Some have held that it is not enough to allege that a report is misleading; there must be inaccurate information in a technical sense to run afoul of Section 1681e(b). *See, e.g.*, *Dickens v. Trans Union Corp.,* 18 Fed. Appx. 315, 318 (6th Cir. 2001); *Cahlin,* 936 F.2d at 1156*; Holmes v. TeleCheck Int'l, Inc.*, 556 F. Supp. 2d 819, 833 (M.D. Tenn. 2008). In *Dickens*, the Sixth Circuit expressly affirmed the technical accuracy rule stated in *Cahlin*:

> [A] plaintiff has failed to carry his initial burden if a court finds that the information contained in a challenged credit report was accurate on its face, or put somewhat differently, "technically accurate." That is, a credit reporting agency satisfies its duty under section 607(b) if it produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect.

*Dickens,* 18 Fed. Appx. at 318 (quoting *Cahlin,* 936 F.2d at 1156).[3]

Moreover, there is clearly a foundation in the text of the statute for the view that information must be technically inaccurate to run afoul of Section 1681e(b). This is plain from a comparison of textual differences between Section 1681e(b) and various other provisions of the FCRA. *Shlahtichman v. 1-800 Contacts, Inc.*, 2010 U.S. App. LEXIS 16484, *8 (Aug. 10, 2010) (courts must "look to the [FCRA] as a whole in discerning a term's meaning rather than examining it in isolation").

The FCRA includes several form and manner provisions requiring the "clear and accurate" and "clear and conspicuous" presentation of information by consumer reporting

---

[3]  The cases discussing the technical accuracy standard date back to the 1970s. *Todd v. Associated Credit Bureau Servs., Inc.,* 451 F. Supp. 447, 448 (E.D. Pa. 1977), *aff'd,* 578 F.2d 1376 (3rd Cir. 1978). Additional cases include: *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 646 (S.D. Ala. 2007); *Heupel v. Trans Union*, 193 F. Supp. 2d 1234, 1240-1241 (N.D. Ala. 2002); *Nelson v. Am. Express Travel Related Servs.*, 2009 U.S. Dist. LEXIS 129787, *29-33 (N.D. Ala. June 17, 2009); *Garrett v. Trans Union*, 2006 U.S. Dist. LEXIS 73395, *38-39 (S.D. Ohio Sept. 29, 2006).

agencies.   15 U.S.C. § 1681a(d)(2)(A)(iii) (requiring conspicuous disclosure to consumer by reporting agency regarding the sharing of information among corporate affiliates), § 1681a(q)(2)(B) (requiring conspicuous placement of "fraud alerts" and "active duty alerts" by reporting agency in consumer files), § 1681c(d)(2) (requiring conspicuous statement by reporting agency in reports with credit scores or other risk scores or predictors regarding the impact on such scores of enquires regarding consumer), § 1681d(a)(1) (requiring a disclosure to the consumer by the user that is "clear and accurate"), § 1681g(a) (requiring "clear and accurate" disclosures to consumers by reporting agency pursuant to § 1681h), § 1681m(b)(1) (requiring a disclosure to the consumer by the user that is "clear and accurate").[4]

But Section 1681e(b) includes no such mandate, implying that *factual correctness* is the exclusive focus of the statutory inquiry.  *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("where Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *Shlahtichman*, 2010 U.S. App. LEXIS 16484, *17-18 ("The statutory language [of Section 1681c(g)] strikes us as significant not only for the terms that is uses but those it does not.").  This is especially true given that, as noted, the technical accuracy cases date back to the 1970s.  *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

---

[4]  The FCRA also includes provisions requiring the "clear and conspicuous" presentation of information by users, corporate affiliates and furnishers (the parties that provide information to consumer reporting agencies, such as merchants).  15 U.S.C. § 1681b(b)(2)(A)(i) (requiring conspicuous disclosure to consumer by user that it may procure an employment-related report), § 1681m(d)(1) (requiring conspicuous statement by user about offer of credit or insurance to consumer), § 1681s-2(a)(1)(C) (requiring conspicuous address disclosure by furnisher to consumers), § 1681s-2(a)(7)(C)(ii) (requiring conspicuous disclosure by furnisher to consumer regarding the reporting of derogatory information), § 1681s-3(a)(1)(A) (requiring conspicuous disclosure to consumer regarding the sharing of information among corporate affiliates for marketing purposes), § 1681s-3(a)(2)(B) (requiring conspicuous notice to consumer of right to opt out of solicitations).

This also follows from a comparison between the text of Sections 1681e(b) and 1681s-2. Both sections use the term "accuracy". Section 1681s-2, as amended, imposes obligations on furnishers. Importantly, Section 1681s-2 also includes the word "integrity," a word that Congress did not originally include in – and has not added to – Section 1681e(b). Congress did not define that term in Section 1681s-2, but directed the FTC to do so. 15 U.S.C. § 1681s-2(e). The FTC's definition suggests that *factual correctness* is the touchstone of "accuracy" and the *fair presentation* of factually correct and complete information the yardstick for "integrity". *Compare* 16 C.F.R. Pt. 660, § 660.2(a) ("Accuracy" means reported information "correctly" identifies the consumer and reflects the terms of and liability for the account or other relationship, and the consumer's performance and other conduct with respect to the account or other relationship) *with* § 660.2(3) ("Integrity" means that reported information can be substantiated, "is furnished in a *form and manner* that is designed to minimize the likelihood that the information may be incorrectly reflected in a consumer report," and includes information in the furnisher's possession the Commission has determined "the absence of which would likely be materially *misleading* in evaluating a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living") (emphasis added).

That some courts have declined to follow the technical accuracy approach does not affect the analysis, because a defendant does not act in an objectively unreasonable manner where, as here, the law is not clearly established at the time of the alleged conduct.[5] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (assessing objective reasonableness involves looking to the

---

[5] *See, e.g., Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (declining technical accuracy standard); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142, 148 (4th Cir. 2008); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984).

legal rules that were clearly established at the time of the alleged violation). Whether the conduct alleged by Plaintiff violates clearly established law is a "purely legal question." *Mitchell v. Forsyth*, 472 U.S. 511, 528 n. 9 (1985) ("We emphasize at this point that the appealable issue is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law."); *see also Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir. 1999) (explaining that "[o]bjective reasonableness is a matter of law for the courts").

It stands to reason that where, as here, a consumer reporting agency adopts a construction of Section 1681e(b) that finds support in federal case law, the agency's conduct is not objectively unreasonable as a matter of law, even if some federal courts have adopted a different construction of that same statutory provision. *Cf. Levine*, 554 F.3d at 1318-1319 (holding the defendant consumer reporting agency did not willfully violate the FCRA as a matter of law because the statutory term "account" was ambiguous and the agency followed one of two lines of authority); *Murray*, 532 F.3d at 725-727 (reaching the same conclusion with regard to the agency's construction of the term "conspicuous"). Indeed, "[i]f judges thus disagree" on the controlling issue, defendants cannot be said to have acted in an objectively unreasonable manner "for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999) (holding the Fourth Amendment was violated but qualified immunity shielded the defendants from liability because law was not clearly established).[6]

The lone unpublished case cited by Plaintiff and the Eastern District (Slip Op. at 13), *Kohut v. Trans Union, LLC*, 2004 U.S. Dist. LEXIS 15724 (N.D. Ill. Aug. 9, 2004), does not

---

[6] *See also Cagle v. Gilley*, 957 F.2d 1347 (6th Cir. 1992) (explaining that a circuit split "indicates that the [plaintiff's] rights in this regard are currently unsettled as a matter of constitutional law" and therefore not "clearly established" at the time of the alleged conduct); *Hall v. Thomas*, 190 F.3d 693 (5th Cir. 1999), 697 (5th Cir. 1999) (circuit split indicates law not clearly established).

affect the analysis.  The decision, which has not been cited by any other court to date, predates *Twombly* and *Iqbal*, i.e., it was decided under the more liberal pleading standard.  More importantly, the court did not hold that redundant tradelines in the plaintiff's credit report made it inaccurate; instead, the court decided to address the question of accuracy later in the case based on the evidence, not the pleadings.  *Id*. at *12-13.  The court never discussed, much less analyzed, the circuit court split on technical accuracy.  Accordingly, the two-paragraph discussion by the court is not the type of authority contemplated by *Safeco*.  HireRight Solutions assumes as true, for the purpose of this motion, all of Plaintiff's allegations concerning the nature of the alleged inaccuracy and argues that such allegations are legally insufficient to state a claim for willfulness.[7]

In sum, the Eastern District committed clear legal error under *Safeco* in ruling that Plaintiff alleges a plausible claim for willful violation of Section 1681e(b).  Because the issue of willfulness should be decided as a matter of law, Plaintiff should not be allowed to amend his Complaint or take discovery.  *Safeco*, 551 at 771 ("there was no need for [the Ninth Circuit] to remand the cases for factual development"); *Levine*, 554 F.3d at 1319 ("*Safeco* makes clear that evidence of subjective bad faith cannot support "a willfulness finding . . . when the company's reading of the statute is objectively reasonable.").

---

[7] *In re: Farmers Ins. Co., Inc, FCRA Lit.*, 2010 U.S. Dist. LEXIS 99476 (W.D. Okla. Sept. 20, 2010), also does not affect the analysis.  There the district court held that it *was* clearly established that notices under Section 1681m were required to include certain information that the defendants systematically omitted, and whether such violations of clearly established law were willful was for the jury to decide.  *Id*. at *95.  In contrast, the circuit courts remain split on the central issue here – the meaning of the term "accuracy".

– Page 18

**B.** **THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR WILLFUL VIOLATION OF § 1681k BECAUSE HE FAILS TO EVEN ALLEGE A VALID PREDICATE CLAIM UNDER § 1681k(a)(2).**

The Eastern District also committed clear error in ruling that Plaintiff alleges a valid claim for willful violation of Section 1681k. HireRight Solutions argued that Plaintiff must plead facts plausibly suggesting a violation of both Sections 1681k(a)(1) *and* (a)(2), because a consumer reporting agency can satisfy its obligation under Section 1681k by complying with *either* subpart. (MTD at 12 fn. 6). The Eastern District implicitly agreed (*see* Slip Op. at 18), but upheld Plaintiff's allegations as barely sufficient. (Slip Op. at 16-18.) The Eastern District committed clear error because Plaintiff fails to allege facts plausibly suggesting a predicate violation of Section 1681k(a)(2), much less a willful violation under Section 1681n.

Section 1681k regulates employment-related consumer reports derived from public records. It provides in pertinent part:

> (a) A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall
>
> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; *or*
>
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

15 U.S.C. § 1681k(a) (emphasis added).

Under a reading of the plain terms of the statute, a consumer reporting agency must comply with *either* subsection (1) or (2), but need not comply with both. *See generally United*

*States v. O'Driscoll*, 761 F.2d 589, 597-98 (10th Cir. 1985) ("When the term 'or' is used, it is presumed to be used in the disjunctive sense unless the legislative intent is clearly contrary."). To state a claim under Section 1681k a plaintiff therefore must allege facts plausibly showing *both* that the defendant did not timely issue a consumer notice *and* did not maintain the requisite strict procedures to ensure public record information reported is complete and up to date. *Ashcroft*, 129 S.Ct. at 1949 (2009) (it is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability).

Plaintiff nowhere alleges that HireRight Solutions reported information that was not complete and up to date.[8] (Comp. ¶ 18.)   The only factual allegations concerning the content of the reports at issue – that they were misleading in reporting redundant records – cannot be stretched so far as alleging that the records were also incomplete or out of date.  The Complaint therefore fails as a matter of law to state a claim for violation of Section 1681k, and it was clear error for the Eastern District to rule otherwise based on its mistaken assumption that the difference between Section 1681k(a)(2) and Section 1681e(b) is only a matter of degree (i.e., "strict" versus "reasonable" procedures).  *Bailey v. United States*, 516 U.S. 137, 146 (1995) ("[W]e assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning").  The Eastern District compounded this error by ruling that Plaintiff alleges a viable willful violation claim.  Because Plaintiff fails to allege facts suggesting that HireRight Solutions violated Section 1681k(a)(2) in the first instance, *a fortiori* it did not willfully do so.  Dismissal is warranted.

---

[8]  15 U.S.C. § 1681k(a)(2) ("For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.").

– Page 20

## VII.   CONCLUSION

This Court should grant reconsideration and enter an order dismissing Plaintiff's Complaint.  Because the issue of willfulness should be decided as a matter of law, there is no basis for allowing Plaintiff to take discovery.

Dated: October 11, 2010                Respectfully submitted,


/s/ R. Richard Love, III
R. Richard Love, III
Conner & Winters, LLP
4000 One Williams Center
Tulsa, OK 74172-0148
Telephone: (918) 586-5679
Facsimile:  (918) 586-8679
RLove@cwlaw.com


/s/ Rod M. Fliegel
Rod M. Fliegel
Littler Mendelson, P.C.
650 California Street, 20th Floor
San Francisco, CA 94108-2693
Telephone: (415) 433-1940
Facsimile:  (415) 399-8490
rfliegel@littler.com


/s/ Robert C. Drake
Robert C. Drake
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
Telephone: (267) 402-3000
Facsimile:  (267) 402-3131
rcdrake@littler.com

**ATTORNEYS FOR DEFENDANT
HIRERIGHT SOLUTIONS, INC., f/k/a
USIS COMMERCIAL SERVICES, INC.**


Firmwide:97885697.1 061997.1026